**Edward A. BRANSTAD and Monroe Branstad, Plaintiffs,**

v.

**Ann VENEMAN, Secretary of the United States Department of Agriculture, Defendant.**

**Nos. C00–3072–MWB, C01–3030–MWB.**

United States District Court,
N.D. Iowa,
Central Division.

May 15, 2002.

Thomas A. Lawler, Lawler & Swanson, PLC, Parkersburg, IA, for plaintiffs.

Kandice A. Wilcox, U.S. Attorney's Office, Cedar Rapids, IA, for defendants.

## MEMORANDUM OPINION AND ORDER ON TRIAL ON THE MERITS ON WRITTEN SUBMISSIONS

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I.  INTRODUCTION .............................................................979
    A.  Initial Findings Of Fact...............................................979
    B.  Procedural Background ...............................................981
        1.  Administrative proceedings .....................................981
            a.  Agency action regarding Tract # 2024 .........................981
            b.  Agency action regarding Tract # 1475 .........................983
        2.  Judicial review proceedings .....................................984
            a.  The complaint for review regarding Tract # 2024....................984
            b.  The complaint for review regarding Tract # 1475....................984
            c.  Interim proceedings .........................................986

II. LEGAL ANALYSIS...........................................................986
    A.  Federal Protection Of Wetlands .......................................986
    B.  Standards For Judicial Review .......................................988
    C.  Judicial Review Regarding Tract # 2024 ...............................989
        1.  Scope of review .................................................989
        2.  "Mootness" of the administrative appeal ...........................990
            a.  Arguments of the parties ....................................990
            b.  Merits of the "mootness" determination .........................991
        3.  "Unappealability" of prior wetland determinations....................993
            a.  Arguments of the parties ....................................993
            b.  Merits of the "unappealability" determination ......................994
                i.   Review of statutory and regulatory changes ...................994
                ii.  Analysis in light of the statutory and regulatory regime ........997
    D.  Judicial Review Regarding Tract # 1475 ...............................999
        1.  Scope of review .................................................999
        2.  Arguments of the parties .........................................999
        3.  Merits of the denial of the appeal ................................1000
            a.  Reasons relied upon by the agency .............................1000
            b.  Failure to mail the appeal to the correct address .................1003

III. CONCLUSION .............................................................1006

These separate actions for judicial review of agency action of the United States Department of Agriculture (USDA) come before the court on trial on the merits on written submissions. Although these two actions have never been formally consolidated, the court nevertheless finds that a consolidated ruling on trial on the merits is appropriate, in light of substantial factual and legal overlap between the two cases. In both actions, the plaintiff producers seek judicial review of agency determinations that they violated the "Swampbuster" Act, 16 U.S.C. §§ 3821–24, when the agency found that they "converted" "wetlands" by repairing an existing tile drainage system on their farmland. The two actions involve the *same* tile drainage system, although they involve administrative action on the effect the repairs to that tile drainage system had on *different*, albeit adjacent, tracts of farm land. The practical effect of the agency's determinations that the producers "converted" "wetlands" is that the producers become ineligible for various farm program benefits and must repay benefits received after the "conversion." However, in both actions, this court entered preliminary injunctions preventing the USDA from pursuing any enforcement actions, including certification of the producers as ineligible for farm program benefits, during the pendency of this litigation. At trial on the merits, the producers contend that the USDA's determinations of wetlands violations should be overturned, while the USDA contends that the court should now affirm the agency's determinations, on the ground that they are neither arbitrary nor capricious.

## I. INTRODUCTION

### A. Initial Findings Of Fact

The factual background to these cases has been discussed extensively in the court's prior rulings on motions for preliminary injunctions. *See Branstad v. Glickman*, 118 F.Supp.2d 925 (N.D.Iowa 2000) (*Branstad I*) (preliminary injunction on enforcement action in Case No. C 00–3072–MWB); *Branstad v. Veneman*, 145 F.Supp.2d 1011 (N.D.Iowa 2001) (*Branstad II*) (preliminary injunction on enforcement action in Case No. C 01–3030–MWB). There is but little to add or change now, although the court must provide sufficient factual and procedural background to put in context the court's final disposition of these matters on trial on the merits.

As mentioned above, these cases involve two adjacent tracts of farmland, which are located in Winnebago County, Iowa. Tract # 2024, which plaintiff Monroe Branstad purchased in 1995, is the subject of Case No. C 00–3072–MWB, and Tract # 1475, which plaintiff Edward Branstad, Monroe's father, also purchased in 1995, is the subject of Case No. C 01–3030–MWB. Monroe and Edward Branstad are both "operators" of both tracts for purposes of the pertinent statute and USDA regulations.

The administrative records reveal that a single tile drainage system was installed on both Tract # 2024 and Tract # 1475 sometime in the early 1900s. The tracts were used for row crops until the 1930s, then again in the 1950s, but thereafter were used primarily for pasture. The prior owners of the tracts were unable to maintain the tile drainage system and they did not contest "wetlands" determinations by the USDA on Tract # 2024 in 1987 and 1991 and on Tract # 1475 in 1991. Since purchasing the tracts, the Branstads have used them to produce corn and soybeans.

In September of 1996, after the Branstads purchased the two tracts, the Branstads sought permission from the USDA to repair the existing tile drainage system on Tract # 2024. The USDA contends that the request for and grant of permission to repair the tile drainage system pertained only to Tract # 2024, not to Tract # 1475, even though the *same* tile drainage system drains both tracts. There is no evidence in the agency record of a separate request to repair the tile drainage system on Tract # 1475. However, the Branstads submitted detailed information about the existing drainage system and their plans to repair it, which indicated that Tract # 1475 was also involved or would be affected. *See* Agency Case Record for Case No. C 00–3072–MWB (NAD Case No.2000E000635) (hereinafter "Record for Tract # 2024"), 145–62.

Mark Sandvik, the District Conservationist of the National Resources Conservation Service (NRCS) of the USDA, responded to the Branstads' request to repair the tile drainage system by letter dated September 16, 1996. That letter stated the following, in its entirety:

> This letter is in response to your request dated 9/10/96, go [sic] improve drainage on your farm located in Winnebago Count, identified as farm # 3778 and Tract # 2024.
>
> We have reviewed the previous wetland determinations for this tract. The most recent wetland determination was completed and signed by our office on 2/12/91. There are 28.1 acres of Farmed Wetland on this tract.
>
> The areas you identified for drainage repair will not effect [sic] any classified wetlands if the repair is made only to original size and depth of tile. **Proceed with your repair project as planned.** For any further drainage improvements in the future you will need to complete a new AD–1026 form at the Farm Service Agency (FSA).

*Id.* at 47 (emphasis in the original) & 144 (same letter).[1]

The Branstads repaired the tile drainage system in 1997 with smaller plastic drain tile that the Branstads contend, the agency's own record shows, and the court finds, did not exceed the size or depth of the original tile system's drainage field. Obviously, the repairs did have the effect of improving drainage from the affected tracts as compared to the effectiveness of the system in recent years—after all, that was the goal of the repairs. However, there is no evidence in the agency record that the repairs exceeded the scope and effect of the drainage system as originally installed on the two tracts. The USDA inspected the installation of the repaired tile system without requiring any changes or initiating any agency action against the Branstads regarding either tract.

However, on September 29, 1998, a neighbor filed a "whistleblower" complaint with the USDA alleging that repair of the tile drainage system had resulted in drainage of wetlands on Tract # 2024, which did prompt agency action. *See* Record for Tract # 2024 at 326–27, ¶¶ 10–11 (Hearing Officer's Findings of Fact). Eventually, the entities at the lowest rungs of the agency determination process, the NRCS and the FSA, determined that there had been wetlands violations as to Tract # 2024, as recounted more fully in the next section. Considerably later, apparently in February or March of 2000, a neighbor filed another "whistleblower" complaint alleging a potential wetlands violation involving Tract # 1475, prompting further agency action involving that tract, as well, which action included a "field visit" on March 9, 2000; and a preliminary determination on March 21, 2000, that there had been a conversion of wetlands on the tract as a result of the repairs in 1997. *See* Agency Case Record for Case No. C 01–3030–MWB (NAD Case No.2001E000535)

---

1. The letter quoted above appears in two places in the Record for Tract # 2024, but with different descriptions in the table of contents, such that it is not readily apparent that the document in the two locations is, indeed, the same document. The letter appears first at page 47, where it is described as "Letter to producer from AGENCY stating wetland on farm—September 16, 1996," and again at page 144, where it is described as "Letter to Producer from AGENCY discussing review of wetland determination—September 16, 1996." Obviously, neither description indicates that the letter (1) is a response to the Branstads' request to improve the drainage system on Tract # 2024; (2) specifically states that the proposed drainage repair "will not [a]ffect any classified wetlands if the repair is made only to original size and depth of tile"; and (3) specifically authorizes the Branstads to proceed with their repair project "as planned." Thus, the descriptions are, at best, misleading in that they fail to indicate the actual procedural significance of the letter as an affirmative response to the Branstads' request for authorization to repair the tile drainage system on Tract # 2024.

The Record for Tract # 2024 is unusually confusing in other respects, as well. Although organized generally under headings such as "Appeal," "Hearing," "Review," "Remands," and "Reversed," with a separate volume of transcripts and tapes, it is difficult to obtain a coherent picture of the manner in which the dispute between the parties developed or the sequence of procedural steps leading to the agency's final determination. For example, documents in each section appear in both chronological and reverse chronological order, apparently on a whim, making it difficult to determine what information was available to the agency or what records or investigation had been relied on at any key point in the administrative proceedings.

The court does not find that the agency has deliberately obfuscated the record or attempted to mislead any reviewing agency body or court, for example, by providing descriptions of documents in the table of contents that disguise the significance of those documents. However, obfuscation and confusion are undoubtedly the results of the manner in which the specific documents have been described and the record as a whole has been presented.

(hereinafter "Record for Tract # 1475"), 37.

In the course of administrative proceedings, the Branstads entered into agreements to restore the wetlands on each tract. More specifically, on February 25, 2000, the Branstads entered into a "Wetland Restoration Agreement: Good Faith Restoration" (Wetland Restoration Agreement for Tract # 2024) with the NRCS for restoration of 12.6 acres of wetland in Tract # 2024. Record for Tract # 2024 at 232. This Wetland Restoration Agreement stated that the specified restoration conditions had to be created and maintained by the Branstads to receive a "Good Faith Exemption" for continuation of farm program benefits. *Id.* It also specified that the "Good Faith Exemption" applied to 12.6 acres of wetland in Tract # 2024 and provided that "[a]ll restoration practices will be accomplished and applied by June 1, 2000." *Id.* Although the Branstads were granted various extensions of the deadline for completion, it is undisputed that the "restoration practices" required by the Wetland Restoration Agreement for Tract # 2024 have never been completed. Similarly, on September 27, 2000, during the administrative proceedings involving Tract # 1475, the Branstads entered into a "Wetland Restoration Agreement: Good Faith Restoration" as to Tract # 1475 (Wetland Restoration Agreement for Tract # 1475), with a deadline for compliance of December 1, 2000. *See* Defendant's Response to Plaintiff's Motion for Preliminary Injunction, Case No. C 01–3030–MWB, Exhibit A.[2] It is also undisputed that the Branstads have not completed the restoration provided for in that agreement, either.

With this admittedly limited factual background, the court turns to the procedural history of these two cases, not least because the agency proceedings fill in con-siderably more of the necessary factual background. The court's survey of the procedural background to these two cases will then turn to the key steps in the Branstads' actions for judicial review.

## B. Procedural Background

### 1. Administrative proceedings

### a. Agency action regarding Tract # 2024

Following the first "whistleblower" complaint, the District Conservationist for Winnebago County, Natural Resources Conservation Service (NRCS), USDA, issued a determination on October 26, 1999, in administrative proceedings involving Tract # 2024, concluding that the Branstads had "converted" 18.4 acres of wetlands on that tract in 1997. Specifically, the District Conservationist found that the "manipulation by installing a drainage tile system on this wetland area is considered an alteration that makes the area more farmable." Record for Tract # 2024 at 17 (District Conservationist's Determination). The District Conservationist warned that this determination would likely result in the loss of the Branstads' eligibility for USDA program benefits for 1997, 1998, 1999, and 2000. *Id.*

The Branstads appealed the determination by the NRCS to the Winnebago County Farm Service Agency Committee (FSA) on November 2, 1999. The FSA held a hearing on November 9, 1999. By letter dated November 15, 1999, to the State Conservationist of the NRCS, the FSA advised the NRCS that it had determined that the NRCS had not considered all of the evidence before making its determination that the Branstads had converted wetlands and recommended that the NRCS review its decision. *Id.* at 106 (FSA Recommendation). However, by letter dated February 7, 2000, the FSA notified the

---

**2.** This restoration agreement was not includ-   ed in the Record for Tract # 1475.

Branstads that the state office of the NRCS had advised the FSA that no further review of the matter was necessary and that the prior determination by the NRCS—that the Branstads had converted wetlands by "installing" the tile drainage system—was accurate. *Id.* at 98–100 (FSA Decision). The letter also stated the FSA's conclusion that the Branstads had improperly converted wetlands and were therefore ineligible for various farm program benefits paid to the Branstads in 1998 and 1999, totaling over $400,000, which the FSA demanded that the Branstads repay by March 8, 2000. *Id.* at 98–99. The FSA also notified the Branstads that, if they were determined to have acted in "good faith," they would be given a reasonable period of time, not to exceed one year, to implement measures to restore the converted wetlands and they would then qualify for reinstatement of benefits. *Id.* at 100. Not surprisingly, the Branstads entered into the Wetland Restoration Agreement for Tract # 2024 shortly after, on February 25, 2000. *Id.* at 232.

Notwithstanding that the FSA had made a "final" determination that the Branstads had "converted" 18.4 acres of wetlands on Tract # 2024, and notwithstanding prior refusal by the NRCS to reconsider its own determination at the request of the FSA, on February 10, 2000, the NRCS reduced the acreage on Tract # 2024 found to be "converted wetland" to 12.6 acres, stating that "[t]his is an amendment to the Final 026E dated October 26, 1999." *See id.* at 14 (NRCS Amendment to FSA Final Determination). The Branstads' Wetland Restoration Agreement for Tract # 2024 reflected this revision in the converted acreage. *Id.* at 232.

At about the same time that the Branstads entered into the Wetland Restoration Agreement for Tract # 2024, they also appealed the FSA Determination of February 7, 2000, to the USDA National Appeals Division (USDA NAD). On April 12, 2000, the Branstads received an administrative evidentiary hearing before a Hearing Officer of the USDA NAD. The Hearing Officer issued an Appeal Determination on April 20, 2000. *See id.* at 325–34. In that Appeal Determination, the Hearing Officer noted that "the monetary penalty is not an issue of appeal as the Agency agrees to waive the assessments once the Appellant restores the converted wetland to its prior state." *Id.* at 325. On the issues raised on the Branstads' administrative appeal, the Hearing Officer held that the Branstads had proved, by the preponderance of the evidence, that the NRCS's "wetlands" determinations pertaining to Tract # 2024 in 1987 and 1991 were in error, *id.* at 329–30; that the NRCS failed to consider all of the evidence in making its determination regarding the Branstads' alleged conversion of wetlands during their repair of the tile drainage system, *id.* at 330; and, specifically, that the NRCS had failed to do a "scope and effect" determination based on the evidence presented to it. *Id.* Thus, the Hearing Officer concluded that the NRCS's certification of a wetland on Tract # 2024 was erroneous and that the NRCS's decision that the Branstads had converted a wetland in the course of their repair of the tile drainage system on Tract # 2024 was erroneous. *Id.* at 331.

However, on May 19, 2000, the FSA requested a "Director Review" of the Hearing Officer's decision. *See id.* at 391–92. The Branstads filed an undated "Response To Request For Direct [sic] Review" at some time thereafter. *See id.* at 395–402. On July 17, 2000, some 42 days after the FSA requested a Director Review, the Acting Director issued a "Director Review Determination." *Id.* at 377–79. In that determination, the Acting Director concluded that, "as a result of the Agency and NRCS good faith agreement

with the Appellants, there was no adverse decision left to hear and the Appellants' appeal of the [converted wetlands] determination is moot." *Id.* at 378. The Acting Director nevertheless also concluded that the wetland determinations in 1987 and 1991 were in accordance with then-existing regulations, were not appealed by the owner of the tract at that time, and consequently "the wetland determination had become final and was no longer subject to appeal," so that "[t]he Hearing Officer's determination concerning the 1987 and 1991 wetland determinations exceeded the scope of NAD jurisdiction in this matter." *Id.* at 379. Therefore, the Acting Director vacated the Hearing Officer's determinations and made a "final determination" pursuant to 7 U.S.C. § 6992(d) denying the Branstads relief. *Id.*

The Branstads filed a complaint for judicial review of the "final determination" in the administrative proceedings involving Tract # 2024 on September 11, 2000, in a complaint seeking declaratory and injunctive relief. However, before considering that judicial complaint, the court will examine the administrative proceedings involving Tract # 1475.

### b. Agency action regarding Tract # 1475

In the administrative action pertaining to Tract # 1475, as in the action concerning tract # 2024, the USDA determined, at the lower levels of the administrative process, that the Branstads had improperly "converted" "wetlands." More specifically, on March 21, 2000, the District Conservationist for the NRCS notified the Branstads of his "preliminary determination," on the basis of a field visit prompted by a "whistleblower" complaint, that "12.2 acres [on Tract # 1475] are determined to be CW + 97," that is, wetlands converted in 1997. Record for Tract # 1475 at 37. On October 26, 2000, pursuant to the Branstads' appeal of the District Conservation-

ist's preliminary determination, the State Conservationist for the NRCS advised the County Executive Director of the FSA that "[t]he record contains documentation of criteria showing that tract 1475 contains 12.6 acres of converted wetland on two different sites." *Id.* at 35. No explanation is given for the difference of 0.4 acres between the determinations of the District and State Conservationists. By letter dated November 2, 2000, the FSA notified the Branstads of the State Conservationist's determination that the tract contained 12.6 acres of converted wetland and the conclusion by the NRCS that "the manipulated actions [sic] in 1997 triggered better drainage and therefor [sic] is conversion of a wetland and that a violation of wetland provision [sic] of the 1996 farm bill has occurred." *Id.* at 33 (FSA Determination).

The Branstads were also notified in the November 2, 2000, letter that they had thirty days to appeal the administrative decision to the next administrative level, the National Appeals Division (NAD). *Id.* Assuming seven days for mailing, the Branstads' deadline for requesting such an appeal was December 9, 2000. The Branstads maintain that their counsel made a timely request for such an appeal by mailing a request by ordinary mail on December 2, 2000. However, the NAD has no record of receiving the Branstads' December 2, 2000, appeal request. On December 1, 2000, the Branstads' counsel also mailed to the NAD copies of Authorizations for Representation of the Branstads in the appeal and, on December 13, 2000, mailed to the District Conservationist a request for an extension of the Wetland Restoration Agreement for Tract # 1475 pending disposition of the administrative appeal, both of which were received by the addressees.

Although the NAD apparently never received the Branstad's first request for an

appeal regarding Tract # 1475, the administrative record does contain a second request for appeal from the Branstads' counsel, postmarked January 12, 2001, and received by the NAD on January 16, 2001. *Id.* at 30 (Second Appeal Request). The Branstads' second request for appeal indicates that the original appeal, a copy of which was enclosed, was mailed on December 1, 2000, and that the second request had been sent, because counsel had not received any acknowledgment of the first filing. *Id.*

Following several exchanges of correspondence, the NAD denied the January 12, 2001, request for appeal as untimely by letter dated January 29, 2001. *See id.* at 12–13. The denial of appeal included the following information:

> In accordance with the preamble to NAD Final Rule set forth at Federal Register Vol. 64, No. 120, page 33369.[Sic] If there are *extenuating circumstances,* you may request a review of this determination within 15 days of the date of this notice by the Director of the National Appeals Division.

*Id.* at 12 (emphasis added). Consequently, the Branstads attempted to obtain reversal of the denial of their appeal as untimely on the basis of "extenuating circumstances." On February 1, 2001, counsel for the Branstads sent a letter to the NAD explaining his attempts to file a timely appeal and his belief that the December 2, 2000, mailing of his request for an appeal "[a]pparently ... has been lost in the U.S. mail system." *Id.* at 5–6. In that letter, the Branstads also asserted "that having [Edward Branstad's] request for appeal lost in the United States Postal System is an extenuating circumstance and that Edward Branstad's request for appeal should be allowed by NAD." *Id.* at 6.

The NAD replied to the Branstads' February 1, 2001, request that their administrative appeal be allowed by letter from Assistant Director William A. Crutchfield, Sr., dated February 13, 2001. *Id.* at 1–2. The letter from Assistant Director Crutchfield states, in pertinent part, the following:

> The Director, National Appeals Division, considered your letter of February 1, 2001. Unfortunately, the circumstances you raise do not establish *good cause* to relieve Mr. Branstad from the requirement of our rules. It is reasonable that a representative seeking to file appeals would check such for filing requirements, and as the appeal in this instance does not conform to our requirements, it cannot be accepted.
>
> An attorney is ordinarily responsible for knowing published requirements pertaining to the matters for which he or she undertakes a representative role. Our regulations at 7 C.F.R. § Section 11.6(b)(1)(2) are published in the Federal Register at Vo. 64, No. 120, Wednesday, June 23, 1999/Rules and Regulations, and provide that an appeal request "be not later than 30 days after the date on which the participant first received notice of the adverse decision ..." and "shall be in writing and personally signed by the participant ..."

*Id.* at 1 (emphasis added). The remainder of the letter is "boilerplate" language concerning USDA prohibitions on discrimination and means for filing a complaint of discrimination. *Id.* at 1–2. There is no reference in this letter to an "extenuating circumstances" standard for relief from the Branstads' untimely appeal, even though that was the standard the NAD had previously stated for overcoming the apparent untimeliness of the request for appeal.

The Branstads filed an action for judicial review of the agency determination regarding Tract # 1475 on March 19, 2001.

### 2. Judicial review proceedings

### a. The complaint for review regarding Tract # 2024

In their September 11, 2000, complaint for judicial review regarding Tract # 2024 (Case No. C 00–3072–MWB), the Branstads seek declaratory and injunctive relief. As to declaratory relief, the Branstads seek a determination that the final agency action, the Director Review Determination issued on July 17, 2000, is arbitrary, capricious, an abuse of discretion, or otherwise contrary to law, in the following respects: (1) the Acting Director of the USDA NAD did not complete a timely review of the Hearing Officer's determination within 10 business days of May 28, 2000, as required by 7 U.S.C. § 6998B(b)(1); (2) the 1987 and 1991 wetland determinations are appealable and were incorrect, and the Branstads are being denied certain USDA farm program benefits on the basis of these erroneous wetland determinations; and (3) the Acting Director of the NAD has been disproportionately overturning decisions by Hearing Officers that were favorable to producers. As to injunctive relief, the Branstads' complaint seeks an injunction that enjoins the USDA from refusing to grant a further extension of the deadline for compliance with the Wetland Restoration Agreement for Tract # 2024 until the conclusion of this action for judicial review. The Branstads therefore seek the following relief in Case No. C 00–3072–MWB regarding Tract # 2024: (1) the injunctive relief requested just above; (2) reversal of the Acting Director's final determination in the administrative proceedings and entry of a judgment compelling the USDA to reinstate the Hearing Officer's determination as the final decision of the agency; (3) remand of this case for agency action in conformity with the court's judgment; (4) a finding that the USDA's position was not substantially justified with a consequent award of attorney fees pursuant to the Equal Access to Justice Act (EAJA), 5 U.S.C. § 504; (5) an award of costs; and (6) such other and further relief as the court deems appropriate.

### b. The complaint for review regarding Tract # 1475

The Branstads filed their action for judicial review of agency action involving Tract # 1475 (Case No. C 01–3030–MWB) on March 19, 2001. Specifically, the Branstads challenge the FSA's determination on November 2, 2000, that the Branstads converted 12.6 acres of wetland by repairing the existing tile drainage system in 1997 on the ground that the determination was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. They seek declaratory judgment as follows: (1) that they sought and received permission to do the tile project in 1997, as long as the new tile did not exceed the size of the old tile; (2) that the tile they installed was smaller than the old tile; (3) that the Hearing Officer concluded that their actions as to Tract # 2024 did not violate the law, and that their activity as to Tract # 1475 is the same activity as that involving Tract # 2024; (4) that they made an adequate showing of a good faith effort to appeal agency determinations to NAD and their appeal should have been allowed; and (5) that the Director of NAD routinely disregards the time limits in the regulations for actions required by the Director, but insists on strict compliance with these time limits by producers. Moreover, the Branstads seek judgment in Case No. C 01–3030–MWB as follows: (1) declaring that the agency's actions are arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; (2) remanding this action to the agency with instructions to take such further action as is consistent with the ruling and judgment of this court; (3) finding that the position of the United States was not substantially

justified, and granting the Branstads their reasonable attorney fees pursuant to EAJA; (4) granting the Branstads the costs of suit herein; and (5) granting such further and other relief as the court deems appropriate.

### c. Interim proceedings

The Branstads also sought preliminary injunctions on agency enforcement actions in both cases. The court granted such a preliminary injunction in Case No. C 00–3072–MWB, involving Tract # 2024, on September 25, 2000. The court granted a similar preliminary injunction in Case No. C 01–3030–MWB, involving Tract # 1475, on June 4, 2001. On July 19, 2001, the court rejected the USDA's motion to reconsider the preliminary injunction in Case No. C 01–3030–MWB.

On February 6, 2002, the court also denied the USDA's motion for summary judgment in Case No. C 00–3072–MWB, finding, *inter alia*, that the motion for summary judgment was ill-advised, where the court would ultimately be the factfinder on a written record, and thus, would ultimately be making the very factual determinations that it could *not* make on a motion for summary judgment, even if the record presented included all of the evidence that would ultimately be submitted. At that point, the way was cleared for trial of the two cases on written submissions.

In Case No. C 00–3072–MWB, the Branstads filed their brief on the merits on February 28, 2002; the USDA responded on April 2, 2002; and the Branstads filed a reply on April 18, 2002. In Case No. C 01–3030–MWB, the Branstads filed their brief on the merits on March 1, 2002, incorporating therein arguments made in their brief in the other case, but arguing separately that their administrative appeal of the determination regarding Tract # 1475 should have been allowed; the USDA responded on April 2, 2002; and

the Branstads filed their reply on April 18, 2002. These matters are now fully submitted without further argument, written or oral.

## II. LEGAL ANALYSIS

The court's legal analysis in these two cases must take into account two bodies of law: (1) The statutory and regulatory scheme under federal law for protection of wetlands, as embodied in the "Swampbuster" Act, 16 U.S.C. §§ 3821–24, and regulations promulgated thereunder; and (2) the court's power of judicial review of agency determinations of wetlands violations under "Swampbuster," as set forth in the Administrative Procedure Act (APA), 5 U.S.C. §§ 701–06. After surveying these two bodies of governing law, the court will turn to review of the agency's determinations regarding the Branstads' purported conversion of wetlands on Tracts # 2024 and # 1475.

### A. Federal Protection Of Wetlands

On the Branstads' motion for a preliminary injunction in Case No. C 00–3072–MWB, this court explained the legal context of the case by providing the following brief primer on federal protection of wetlands, which is applicable to both cases now before the court:

> As the Eighth Circuit Court of Appeals has explained,
>
> "In order to combat the disappearance of wetlands through their conversion into crop lands, Congress passed a law known commonly as 'Swampbuster.'" *Gunn [v. USDA]*, 118 F.3d [1233,] 1235 [ (8th Cir.1997) ], *cert. denied*, [522] U.S. [1111], 118 S.Ct. 1042[, 140 L.Ed.2d 108] (1998) (citing Food Security Act of 1985 §§ 1201, 1221–23, 16 U.S.C. §§ 3801, 3821–24). The law denies eligibility for several federal farm-assistance programs if wetlands are converted to agricultural use. *See National Wildlife Fed'n v.*

*Agricultural Stabilization and Conservation Serv.,* 955 F.2d 1199, 1200 (8th Cir.1992). In addition, the law provides for exemptions, namely wetlands that were converted before December 23, 1985—the effective date of the law. *See Gunn,* 118 F.3d at 1235. Land meeting this exemption can be maintained as it was prior to the effective date of the Act without loss of federal benefits.

*Barthel v. USDA,* 181 F.3d 934, 936 (8th Cir.1999) (footnotes omitted); *Gunn v. USDA,* 118 F.3d 1233, 1235 (8th Cir. 1997) ("This law did not make illegal the conversion of wetlands to agricultural use, but did provide that any agricultural production on a converted wetland would cause the farmer to forfeit his eligibility for a number of federal farmer-assistance programs."), *cert. denied,* 522 U.S. 1111, 118 S.Ct. 1042, 140 L.Ed.2d 108 (1998); *Downer v. United States by USDA,* 97 F.3d 999, 1002 (8th Cir.1996) ("Under Swampbuster, persons who plant agricultural commodities on converted wetlands in violation of Swampbuster become ineligible for government price support payments."); *Von Eye v. United States,* 92 F.3d 681, 685 (8th Cir.1996) ("Under the Swampbuster Act, 16 U.S.C. §§ 3821–24, anyone who produces an agricultural commodity on a converted wetland or converts a wetland ... is ineligible for enumerated USDA benefits, including price supports, loans, disaster payments, and crop insurance.").

In short, "[t]he Act's proclaimed purpose is to preserve wetlands, or, if wetlands are altered, to preserve the conditions as altered." *Id.* at 937. Where a farmer improperly alters wetlands that existed prior to December 23, 1985, the USDA can impose penalties including ineligibility for farm program benefits from the date of the violation "in an amount determined by the Secretary to be proportionate to the severity of the violation." *See* 16 U.S.C. § 3821(a); *see also Barthel,* 181 F.3d at 936 & n. 4; *Gunn,* 118 F.3d at 1235; *Downer,* 97 F.3d at 1002; *Von Eye,* 92 F.3d at 685. However, "[a]mong the exemptions to the provisions of Swampbuster is one for wetlands that had been converted to agricultural production before December 23, 1985. The farming of such previously converted wetlands does not make the farmer ineligible for benefits." *See Gunn,* 118 F.3d at 1235 (citing 16 U.S.C. § 3821(d)) (internal citations omitted); *Von Eye,* 92 F.3d at 685.

*Branstad I,* 118 F.Supp.2d at 927–28; *accord Branstad II,* 145 F.Supp.2d at 1014.

Somewhat more specifically, the Swampbuster Act provides that "[n]o person shall become ineligible ... for program loans or payments ... [a]s the result of the production of an agricultural commodity on ... [a] converted wetland if the conversion of the wetland was commenced before December 23, 1985," 16 U.S.C. § 3822(b)(1)(A); *Gunn,* 118 F.3d at 1238. Wetlands that were converted to production of agricultural commodities *before* the cutoff date of December 23, 1985, "can continue to be farmed without the loss of benefits, but only so long as the previously accomplished drainage or manipulation is not significantly improved upon, so that wetland characteristics are further degraded in a significant way." *Gunn,* 118 F.3d at 1238; *see also Barthel,* 181 F.3d at 939 (quoting *Gunn* ). Moreover, a producer is entitled to an on-site determination of wetlands before a determination that the producer is ineligible for benefits owing to conversion of wetlands becomes binding. 16 U.S.C. § 3822(a)(4); 7 C.F.R. § 12.6(c)(9) (1998) & (2002). In 1998 and 2000, at the time of the agency actions at issue here, as now, a participant could obtain a review of any wetland determination before any benefits were withheld. 7 C.F.R. § 12.30(c)(4) (1998) & (2000).

When the Eighth Circuit Court of Appeals was presented with the question of whether a producer had "converted" wetlands in violation of the Swampbuster Act, based on repairs to a drainage system that existed prior to December 23, 1985, the court found it necessary to remand to the agency "for a hearing and determination *of the wetland characteristics and associated use* of the [farmland] prior to December 23, 1985, *and the necessary dredging and cleaning of the ditch to accomplish that water and farming regime.*" *Barthel*, 181 F.3d at 939 (emphasis added). Similarly, here, the *ultimate* question in these cases *may be* whether the Branstads' repair of a tile drainage system on Tract # 2024 and Tract # 1475 that existed prior to 1985 was in excess of the requirements to accomplish the water and farming regime as it existed prior to December 23, 1985. However, it remains to be seen whether the court can properly reach that question on judicial review in either action.

Although additional provisions of the Swampbuster Act and USDA regulations may become pertinent in analysis of the parties' arguments below, the court will complete its general survey of the legal context of the present disputes by examining the standards for judicial review of agency determinations under the Swampbuster Act.

### B. Standards For Judicial Review

■ The Administrative Procedure Act (APA), 5 U.S.C. §§ 701–06, is the correct vehicle for judicial review of USDA administrative action under the Swampbuster Act. *See Barthel*, 181 F.3d at 937 (applying APA judicial review to USDA determinations under the Swampbuster Act); *Downer*, 97 F.3d at 1002 (same); *Von Eye*, 92 F.3d at 685 (same). However, judicial review under the APA is only available for a "final" agency determination. *See* 5

U.S.C. § 704 (permitting review of "final" agency action); *In re Russell*, 155 F.3d 1012, 1013 (8th Cir.1998) ("the APA waives immunity only when the agency action is final") (citing 5 U.S.C. § 704). As to Case No. C 00–3072–MWB, regarding Tract # 2024, the Director Review Determination indicated that it was such a "final" agency determination, and the court finds that there was no further agency review available to the Branstads. Record for Tract # 2024 at 379 (identifying that decision as a "final" agency determination in this case under 7 U.S.C. § 6992(b)).

Similarly, in Case No. C 01–3030–MWB, regarding Tract # 1475, even though the Branstads were not permitted to complete agency review of the lower-level determinations of a wetlands violation on that tract, the court concludes that the denial of the Branstads' request for appeal based on "extenuating circumstances" is reviewable in these proceedings. The court concludes that the denial of appeal regarding Tract # 1475 based on "extenuating circumstances" was a reviewable "final determination," pursuant to 7 C.F.R. § 11.13(a) ("A final determination of the Division shall be reviewable and enforceable by any United States District Court of competent jurisdiction in accordance with chapter 7 of title 5, United States Code."), because the Director's denial of appeal based on "extenuating circumstances" was the final adverse decision of the agency available from the NAD, pursuant to its procedures, on the Branstads' attempt to pursue administrative appeals. *See* 7 C.F.R. § 11.13(b) ("An appellant may not seek judicial review of any agency adverse decision appealable under this part without receiving a final determination from the Division pursuant to the procedures of this part.").[3]

■ Under the APA, a final agency determination may be overturned on judicial

---

3. The USDA does not repeat in its submissions on trial on the merits in Case No. C 01–

3030–MWB all of the challenges to the court's

review only if it is arbitrary and capricious, an abuse of discretion, or otherwise contrary to law. *See* 5 U.S.C. § 706; *see also Barthel,* 181 F.3d at 937; *Downer v. United States,* 97 F.3d 999, 1002 (8th Cir.1996) (in an action for judicial review of administrative determinations concerning wetlands under the Swampbuster Act, the court concluded that "[o]ur review ... is limited to a determination of whether the decisions were 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law'") (quoting 5 U.S.C. § 706(2)(A)). As this court explained in *Branstad I,*

> "This narrow review entails a 'searching and careful' de novo review of the administrative record presented to determine 'whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" [*Downer,* 97 F.3d at 1002] (quoting *Marsh v. Oregon Natural Resources Council,* 490 U.S. 360, 378, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989)).

More specifically,

> To perform this review the court looks to whether the agency considered those factors Congress intended it to consider; whether the agency considered factors Congress did not intend it to consider; whether the agency failed entirely to consider an important aspect of the problem; whether the agency decision runs counter to the evidence before it; or whether there is such a lack of a rational connection between the facts found and the decision made that the

disputed decision cannot "be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983). If the agency itself has not provided a reasoned basis for its action, the court may not supply one. *Id.*

> Nonetheless, the reviewing court may not substitute its judgment for that of the agency and must give substantial deference to agency determinations. *Id.* This deference is particularly appropriate when the agency determination in issue concerns a subject within the agency's own area of expertise. *Marsh,* 490 U.S. at 377–78, 109 S.Ct. at 1861–62. An agency making fact-based determinations in its own field of expertise, particularly where those determinations are wrapped up with scientific judgments, must be permitted "to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive." *Id.* at 378, 109 S.Ct. at 1861.

*Downer,* 97 F.3d at 1002.

*Branstad I,* 118 F.Supp.2d at 939–40. The parties do not appear to dispute this court's prior statement of the standards for judicial review in these cases.

### C. Judicial Review Regarding Tract # 2024

#### 1. Scope of review

Although the parties argue the merits of various determinations made in the course

---

subject matter jurisdiction that it raised in response to the Branstads' motion for preliminary injunction in that case, although the USDA does contend that the Branstads failed to exhaust their administrative remedies by filing only an untimely request for administrative appeal. However, the USDA's "exhaustion" argument is now repackaged somewhat

as an argument that the agency's determination that the Branstads had not properly appealed lower administrative determinations is not arbitrary or capricious, and thus, the lack of a timely administrative appeal bars judicial review of the underlying agency determination.

of the administrative proceedings involving Tract # 2024, the court will focus, at least in the first instance, only on the parties' arguments pertaining to the determinations actually made in the agency's "final" determination regarding Tract # 2024, that is, the determinations made in the Director Review Determination. *See* 5 U.S.C. § 704 (judicial review is only available for a "final" agency determination); *In re Russell,* 155 F.3d 1012, 1013 (8th Cir.1998) ("the APA waives immunity only when the agency action is final") (citing 5 U.S.C. § 704).[4] The only determinations made in the Director Review Determination are the following: (1) a determination that, "as a result of the Agency and NRCS good faith agreement with the Appellants, there was no adverse decision left to hear and the Appellants' appeal of the [converted wetlands] determination is moot," Record for C 00–3072 at 378; and (2) a determination, notwithstanding the "mootness" of the administrative appeal, that the 1987 and 1991 wetland determinations were final and unappealable, so that "[t]he Hearing Officer's determination concerning [*i.e.,* overturning] the 1987 and 1991 wetland determinations exceeded the scope of NAD jurisdiction in this matter." *Id.* at 379.

### 2. *"Mootness" of the administrative appeal*

#### a. *Arguments of the parties*

As to the purported "mootness" of their appeal, the Branstads argue in their opening brief that a "good faith" exemption only waives a violator's ineligibility for benefits, but does not eliminate the violation of the wetlands law. Furthermore, they contend that they received assurances from the County Executive Director of the FSA that signing the restoration agreement did not moot their administrative appeal, and that this understanding was memorialized in a letter from the County Executive Director on March 2, 2000. Record for Tract # 2024 at 231. They contend, further, that the agency's actions have been consistent with their understanding that the Wetland Restoration Agreement did not moot their administrative appeal; the agency never raised the issue of mootness at the hearing before the Hearing Officer; and the agency acknowledged in its request for Director Review that, when they entered into the Wetland Restoration Agreement, the Branstads reserved their right to appeal the agency's determinations. *Id.* at 422. They point out that the Acting Director raised the mootness issue *sua sponte* and gave no adequate reason for concluding that the appeal was moot. Thus, they contend that the agency's "mootness" determination is arbitrary, capricious, and an abuse of discretion.

The USDA, however, contends that the Branstads stipulated in the Wetland Restoration Agreement for Tract # 2024 that there had been an improper conversion of wetlands, and so should not be entitled to raise on appeal an issue that they conceded. Thus, the USDA contends that the Acting Director's "mootness" decision was proper and was supported by the evidence. The USDA also argues that the letter from the Executive Director of the FSA purportedly acknowledging the Branstads' right to pursue their administrative appeal notwithstanding the restoration agreement also states that "[the] restoration plan you adopted must be followed to remain eligible for program benefits at this time," but the Branstads now contend that by signing the agreement, they never intended to concede that wetlands existed or had been converted, robbing them of any "good

---

4. However, pursuant to § 704 of the APA, the court may, if necessary, also review "[a] preliminary, procedural, or intermediate agency action or ruling not directly reviewable [that] is subject to review on the review of the final agency action." 5 U.S.C. § 704.

faith" upon which an exemption could be based, and that it is undisputed that they have not performed the required restoration of the wetlands. In other words, the USDA contends, the Branstads should not be able to claim that they have been harmed by a determination that their administrative appeal was moot, when it is their own violation of the restoration agreement that results in the denial of benefits.

In reply, the Branstads point out that there is nothing in either governing statutes or regulations that requires the agency to conclude that a wetlands restoration agreement moots an administrative appeal of the underlying wetland determination. They also dispute the USDA's contention that there is any stipulation or concession in the restoration agreement that they improperly converted wetlands. They also argue that the Acting Director's determination of "mootness" was not authorized by applicable regulations, which instead required the Acting Director to ensure that the Hearing Officer's decision was consistent with the statutes, regulations, and evidence presented. The Branstads contend, further, that the "good faith" to which the exemption from denial of benefits applies is their "good faith" in converting wetlands, not their "good faith" in performing a restoration agreement, and that there is more than sufficient evidence that any "conversion" of "wetlands" on Tract # 2024 was in "good faith." Moreover, they argue that performing the restoration agreement might have mooted their appeal, so that it was proper for them to hold that agreement in abeyance while they continued to contest the underlying wetland determination. Finally, they contend that it was not their failure to perform the restoration agreement that resulted in the

denial of benefits, but the agency's erroneous determination that they had converted wetlands in the first place.

### b. Merits of the "mootness" determination

■ The court's view of the "mootness" issue expressed in its decision on the Branstads' motion for a preliminary injunction in Case No. C 00–3072–MWB has hardened upon a full consideration of the record on judicial review into a firm conclusion that the Acting Director's "mootness" determination was arbitrary, capricious, an abuse of discretion, and contrary to law. *See* 5 U.S.C. § 706 (a final agency determination may be overturned on judicial review only if it is arbitrary and capricious, an abuse of discretion, or otherwise contrary to law); *see also Barthel,* 181 F.3d at 937 (applying this standard of review to an agency determination of a wetlands violation); *Downer,* 97 F.3d at 1002 (same). None of the arguments offered by the USDA at trial can salvage the Acting Director's determination on this issue.

The Acting Director's conclusion that the parties' entry into the Wetland Restoration Agreement somehow mooted the entire dispute was clearly arbitrary and capricious, in light of record evidence that the FSA and NRCS had agreed that signing the restoration agreement did not moot the Branstads' administrative appeal, as memorialized in a letter from the County Executive Director on March 2, 2000, Record for Tract # 2024 at 231, the agency acknowledged in its request for Director Review that the Branstads reserved their right to appeal the agency's determinations when they entered into the Wetland Restoration Agreement, and the agency never contested that reservation of rights. *Id.* at 422.[5] Moreover, contrary to the

---

**5.** The FSA also informed the Branstads that, "until further notice the June 1st date [for compliance with the Wetland Restoration

Agreement] ha[d] been suspended pending the final decision of the NAD appeal." Preliminary Injunction Hearing Supplemental

USDA's assertion, the court finds no "concession" that the Branstads had "converted" wetlands in the Wetland Restoration Agreement. Although the Agreement provides for the restoration of the tract "to its pre-existing conditions," and recognizes that "[t]his site was previously labeled as a 'W' wetland," there is no concession that the prior conditions were, in fact, that protected "wetlands" existed or that the prior "wetland" designations were correct. *See* Record for Tract # 2024 at 232. Quite simply, the USDA's reassertion of its argument that the Wetland Restoration Agreement for Tract # 2024 constitutes concessions that the prior wetland determinations were correct or that the Branstads improperly converted wetlands by restoring the tile drainage system is no more persuasive now, in the face of the plain language of the Agreement, than it was when the court rejected that argument at the preliminary injunction stage of the proceedings. To put it another way, in making a determination that the Branstads' appeal was "moot," the Acting Director "failed entirely to consider ... important aspect[s] of the problem," which were whether the agency had agreed to allow the administrative appeal to continue and whether the language of the Wetland Restoration Agreement for Tract # 2024 actually embodied any concessions mooting the appeal. *See Downer*, 97 F.3d at 1002 (factors in the court's judicial review of agency action for abuse of discretion, arbitrariness, or capriciousness). That determination also "runs counter to the evidence before [the Acting Director]," which was that the agency had agreed to allow

the administrative appeal to continue and the actual language of the Wetland Restoration Agreement did not include any concessions that would moot the appeal. *See id.* Consequently, the "mootness" determination was arbitrary and capricious and an abuse of discretion.

Finally, the Branstads are correct that the Wetland Restoration Agreement for Tract # 2024 does not "moot" an administrative appeal of wetland determinations, because such an agreement does no more than provide the producer with an opportunity to regain eligibility for benefits; it does not expunge the violation and does not resolve the underlying issues, which are whether or not the agency's "wetland" and "conversion" determinations were correct. *See* 16 U.S.C. § 3822(h) (providing that "[t]he Secretary may waive a person's ineligibility under section 3821 of this title for program [benefits], if the Secretary determines that the person has acted in good faith and without intent to violate this subchapter," but not providing for expungement of the violation). Also, if the agreement is completely fulfilled, the Branstads would be deprived of whatever *legitimate* benefit they might have derived from repairing a drainage system that existed prior to 1985. *See* 16 U.S.C. § 3821(d) (prior conversion exemption); 16 U.S.C. § 3822(g) (a "good faith" exemption does not overturn the agency's "wetlands" or "conversion" determinations or allow the alterations performed by the producer to stand). Thus, the Acting Director's conclusion that entering into the restoration agreement "moots" an administrative

Exhibit 9, June 1, 2000, letter to Mr. Lawler (FSA Deadline Extension). This letter is not in the administrative record, because the "mootness" of the Branstads' appeal in light of the Wetland Restoration Agreement for Tract # 2024 had not been at issue in the administrative proceedings prior to the Acting Director's determination. Rather, as pointed

out in the body of this opinion, the FSA had conceded in their request for Director Review that the Branstads had reserved their right to continue their administrative appeal notwithstanding the restoration agreement, and the FSA did not contest the effectiveness of the Branstads' reservation of that right.

appeal of the agency's determination that there has been a "conversion" of "wetlands" is contrary to law, because it is contrary to the statute providing for the "good faith" exemption. *See* 5 U.S.C. § 706 (permitting the court to overturn an agency decision that is contrary to or not in accordance with the law); *see also Barthel*, 181 F.3d at 937; *Downer*, 97 F.3d at 1002.

Consequently, Case No. C 00–3072–MWB must be remanded to the agency, at a minimum, for Director Review considering the merits of the agency's "wetlands" and "conversion" determinations, because the Branstads' administrative appeal was not "moot."

### 3. *"Unappealability" of prior wetland determinations*

Notwithstanding the purported "mootness" of the Branstads' administrative appeal concerning Tract # 2024, the Director Review Determination, the "final" agency action subject to judicial review here, *see* 5 U.S.C. § 704, also included a determination that the 1987 and 1991 wetland determinations were final and unappealable, such that "[t]he Hearing Officer's determination concerning [*i.e.*, overturning] the 1987 and 1991 wetland determinations exceeded the scope of NAD jurisdiction in this matter." Record for C 00–3072 at 379. Because the administrative appeal was not moot, the court will also review this "unappealability" determination.

#### a. *Arguments of the parties*

The Branstads argue in their opening brief that the 1987 and 1991 wetland determinations on Tract # 2024 were made "off-site," but an "on-site" determination must be made if a person disagrees with an off-site determination, and must be made before a person can be made ineligible for program benefits owing to improper conversion of wetlands. They point to record evidence that they did, indeed, disagree

with the 1987 and 1991 wetland determinations, and that they were subjected to potential denial of benefits based upon a supposed wetlands violation, which required the NRCS to make an on-site determination as to whether the area met the applicable wetland criteria. Because the applicable statutory and regulatory provisions give them the right to have an on-site determination as to whether the area met the wetland criteria, and also establish that this on-site determination becomes a review of the prior off-site determinations, where the on-site determinations here differed from the prior off-site determinations in the number of acres constituting wetlands, the Branstads argue that they are entitled to a review of the 1987 and 1991 off-site wetland determinations. Therefore, they contend that the Hearing Officer properly considered whether the 1987 and 1991 wetland determinations were correct. Thus, the Acting Director's determination that those prior wetland determinations were unappealable was arbitrary and capricious or contrary to law.

However, the USDA contends that, pursuant to various regulations, wetland determinations made prior to November 28, 1990, must be considered final and "certified" if they meet the current regulatory criteria for certification. The USDA argues that the record is clear that the prior wetland determinations were made in accordance with the prescribed procedures for certification, which did not require field visits, the prior owners were notified of the wetland determinations in 1987 and 1991, but did not appeal them, and so, those determinations were no longer subject to appeal or consideration by the Hearing Officer. The USDA contends that an on-site determination is only required if a person disagreed with the off-site determination, but the owners of the land at the time of the 1987 and 1991 determinations, the only persons in a position to disagree,

did not disagree or pursue an appeal within the requisite time frame. Consequently, the USDA argues that the agency had a right to consider such determinations "final," so that it was not arbitrary and capricious for the agency to do so. Even if the Branstads retained some right to challenge the prior wetland determinations, the USDA contends that those determinations were properly made, after considering the factors identified by statute or regulation.

In reply, the Branstads argue that, pursuant to 16 U.S.C. § 3822(a)(4), a certification of wetlands can be challenged at *any time* by a person affected by the certification. They argue, further, that they were entitled under § 3822(c) to challenge the prior off-site wetland determinations when they were threatened with the denial of benefits for a wetlands violation. The Branstads also argue that the USDA has relied on a "phantom" regulation, 7 C.F.R. § 12.30(d), for its argument that the prior wetland determinations were "certified," because no such regulation exists.

### b. Merits of the "unappealability" determination

The court finds that a review of the history of the applicable statutes and regulations is required to determine whether or not the 1987 and 1991 wetland determinations on Tract #2024 were "unappealable," as the Acting Director concluded, or whether that conclusion was instead contrary to law. *See* 5 U.S.C. § 706 (permitting the court to overturn an agency decision that is contrary to or not in accordance with the law); *see also Barthel,* 181 F.3d at 937; *Downer,* 97 F.3d at 1002. This review reveals several key changes in the statutory and regulatory regime as well as specific impacts of those changes on the wetland determinations for Tract #2024.

### i. Review of statutory and regulatory changes.

In 1987, when the first wetland determination on Tract #2024 that the USDA now contends is "unappealable" was made, applicable regulations did, indeed, permit determinations of wetlands to be made off-site based, for example, on published soil surveys. *See* 7 C.F.R. § 12.31 (June 27, 1986). There was no provision, statutory or regulatory, at that time for "certification" of wetland determinations.

However, effective November 28, 1990, the controlling statute, 16 U.S.C. § 3822(a) was amended, in part, to provide for "delineation" and "certification" of wetlands, as follows:

**(a) Delineation of wetlands**

**(1) Wetland delineation maps**

The Secretary shall delineate wetlands on wetland delineation maps. *The Secretary shall make a reasonable effort to make an on-site wetland determination whenever requested by an owner or operator, prior to such delineation.*

(2) Certification

*Upon providing notice to affected owners or operators, the Secretary shall certify each such map as sufficient for the purpose of making determinations of ineligibility for program benefits under section 3821 of this title and shall, in accordance with section 3843 of this title, provide an opportunity to appeal such delineations to the Secretary prior to making such certification final. In the case of an appeal, the Secretary shall review and certify the accuracy of the mapping of all lands subject to the appeal mapped prior to November 28, 1990, for the purpose of wetland delineations to ensure that wetland on such lands has been accurately delineated. Prior to rendering a decision on any such appeal, the Secretary shall conduct an on-site inspection of the subject land. The Secretary shall*

not be required to provide an opportunity for an appeal of delineations completed prior to the enactment of this subsection that are not changed, and for which an appeal had already occurred and, in connection with such previous appeal, an on-site determination had been conducted.

16 U.S.C. § 3822(a)(1) & (2) (1991) (emphasis added). Although it does not appear that any appeal necessitated redelineation of the wetlands on Tract # 2024, since the 1987 delineation was made "prior to November 28, 1990," it does appear that the 1991 wetland determination on Tract # 2024 was made pursuant to this statutory mandate to delineate wetlands on wetland delineation maps. *See id.* at (a)(1).

Whatever the reason, a new wetland determination for Tract # 2024 was, in fact, made by the agency in 1991, which indicates 28.1 acres of wetland on the tract; indeed, the 1987 wetland determination in the agency record is marked "Void." *Compare* Record for Tract # 2024 at 27 (Highly Erodible Land and Wetland Conservation Determination for Tract # 2024, dated February 12, 1991), *with id.* at 29 (Highly Erodible Land and Wetland Conservation Determination for Tract # 2024, dated April 23, 1987). The 1991 wetland determination was made on Tract # 2024, notwithstanding the USDA's correct observation in this litigation that a regulation adopted on April 23, 1991, provides that "[w]etland determinations made prior to November 28, 1990, shall be considered to be final and certified if they meet the criteria of § 12.31," and so the agency might have been justified in treating the 1987 wetland determination as "final and certified," if the determination satisfied the criteria of § 12.31, a matter not immediately obvious from the record. 7 C.F.R. § 12.30(d) (April 23, 1991). Plainly, however, the USDA itself considered the 1987 wetland determination for Tract # 2024 to be superseded by the wetland determination in 1991, because it "voided" the 1987 determination.

The problem is that the redetermination of wetlands on Tract # 2024 on February 12, 1991, fell between the amendment to the statute in 1990, which authorized certification of wetland delineation maps, and the amendment of applicable regulations on April 23, 1991, explaining when such delineations became "final and certified." Therefore, it is not clear when, if ever, the 1991 wetland determination on Tract # 2024 became "final and certified."

Subdivision (d) vanished from 7 C.F.R. § 12.30 when the regulation was amended again on October 11, 1996. *See* 7 C.F.R. § 12.30 (Oct. 11, 1996). However, before considering that amendment to the regulation, it is important to note the amendment of the *statute*, 16 U.S.C. § 3822(a) on April 4, 1996, which brought the statute to its present form and necessitated amendment of the regulation. As amended in 1996, § 3822(a) now provides as follows:

**(a) Delineation by the Secretary**

**(1) In general**

Subject to subsection (b) of this section and paragraph (6), the Secretary shall delineate, determine, and certify all wetlands located on subject land on a farm.

**(2) Wetland delineation maps**

The Secretary shall delineate wetlands on wetland delineation maps. On the request of a person, the Secretary shall make a reasonable effort to make an on-site wetland determination prior to delineation.

**(3) Certification**

On providing notice to affected persons, the Secretary shall—

(A) certify whether a map is sufficient for the purpose of making a determination of ineligibility for pro-

gram benefits under section 3821 of this title; and

**(B)** provide an opportunity to appeal the certification prior to the certification becoming final.

**(4) Duration of certification**

*A final certification made under paragraph (3) shall remain valid and in effect as long as the area is devoted to an agricultural use or until such time as the person affected by the certification requests review of the certification by the Secretary.*

**(5) Review of mapping on appeal**

In the case of an appeal of the Secretary's certification, the Secretary shall review and certify the accuracy of the mapping of all land subject to the appeal to ensure that the subject land has been accurately delineated. *Prior to rendering a decision on the appeal, the Secretary shall conduct an on-site inspection of the subject land on a farm.*

**(6) Reliance on prior certified delineation**

No person shall be adversely affected because of having taken an action based on a previous certified wetland delineation by the Secretary. *The delineation shall not be subject to a subsequent wetland certification or delineation by the Secretary, unless requested by the person under paragraph (4).*

16 U.S.C. § 3822(a) (emphasis added). Thus, as amended, the statute apparently allows off-site delineation and certification of wetlands, as it only requires the Secretary to "make *a reasonable effort* to make an on-site wetland determination prior to delineation" if a party *requests* such a determination, but the statute *requires* an on-site inspection of the subject land if the

determination is *appealed. See* 16 U.S.C. § 3822(a)(2) & (5).

This point is clarified somewhat by a pertinent regulation, 7 C.F.R. § 12.30, as amended on October 11, 1996, in the wake of amendment of the statute, because the amended regulation expressly stated in subsection (c), on "Certification of wetland determinations and wetland delineations," that "NRCS may certify a wetland determination without making a field investigation." 7 C.F.R. § 12.30(c)(1) (Oct. 11, 1996). The amended regulation also provided, in keeping with the statute's language concerning rights on appeal of a wetland determination, that "NRCS will notify the person affected by the certification and provide an opportunity to appeal the certification prior to the certification becoming final." *Id.*[6] The amended regulation also provided that "[t]he wetland determination and wetland delineation shall be certified as final by the NRCS official 30 days after providing the person notice of certification or, if an appeal is filed with USDA, after the administrative appeal procedures are exhausted." *Id.*

More importantly for present purposes, however, the *statute* as amended in 1996 expressly states that "a final certification" is only "valid and in effect as long as the area is devoted to an agricultural use *or until such time as the person affected by the certification requests review of the certification by the Secretary.*" *Id.* at (a)(4) (emphasis added). Thus, even assuming that the 1991 wetland determination for Tract # 2024 was "final and certified," it was valid only until "*the person affected by the determination*"—not just the person affected *at the time of the certification*—"request[ed] review of the certification by the Secretary." 16 U.S.C.

---

**6.** The regulation, as amended on October 11, 1996, also provided that "[a]ll wetland determinations made after July 3, 1996, will be

done on a tract basis and will be considered certified wetland determinations." 7 C.F.R. § 12.30(c)(1) (Oct. 11, 1996).

§ 3822(a)(4) (as amended April 4, 1996). Nothing about the language of subsection (a)(4) suggests that the "person affected by the determination" must be the person who owned the property *at the time* of the determination. To the contrary, in light of the plain language of the statute, the statute must be read to mean that *any* person *subsequently affected* by an *existing* wetland determination may invalidate the existing certification by requesting review of the certification by the Secretary. This reading is supported by comparison with subsection (a)(4), regarding the other condition for invalidating an existing certification, which is cessation of a period during which "the area is devoted to an agricultural use," which also has no time limitation on when the cessation of such activity may occur, causing invalidation of the wetland determination. 16 U.S.C. § 3822(a)(4). This reading is supported further by subsection (a)(6), which prohibits the Secretary from making any "subsequent wetland certification or delineation," without time limitation or reference to the person owning the land at the time of the existing determination, "*unless* requested by the person under paragraph (4)," *i.e.,* "the person affected by the determination." *See* 16 U.S.C. § 3822(a)(6) (emphasis added) & (a)(4). In other words, pursuant to § 3822(a)(6), the Secretary may not invalidate an existing, certified wetland determination unless asked to do so by a person then affected by the determination, but, pursuant to § 3822(a)(4), a person affected by an existing, certified wetland determination may request that the Secretary review an existing certified determination, which ends the "validity" of the existing certified determination.

■ *ii. Analysis in light of the statutory and regulatory regime.* This survey of the statutory and regulatory changes between 1987, when the agency made the first supposedly "unappealable" wetland determination on Tract # 2024, and 1998, when agency action against the Branstads began, demonstrates that the Acting Director's "unappealability" determination is arbitrary and capricious, an abuse of discretion, and contrary to law. *See* 5 U.S.C. § 706 (standards for overturning agency action on judicial review); *see also Barthel,* 181 F.3d at 937; *Downer,* 97 F.3d at 1002. First, the Acting Director's determination that the 1987 wetland determination was unappealable was plainly contrary to the record evidence that the 1987 determination was superseded in 1991. *See Downer,* 97 F.3d at 1002 ("whether the agency decision runs counter to the evidence before it" is a factor in determining whether an agency decision is arbitrary and capricious). Second, the Acting Director's determination that the 1991 wetland determination was "unappealable" is plainly contrary to law, *see id.* (another basis for overturning agency action), even assuming that the 1991 determination was "certified" and "final," because, pursuant to *statute,* that wetland determination was valid only until "the person affected by the determination request[ed] review of the certification by the Secretary." 16 U.S.C. § 3822(a)(4) (as amended April 4, 1996). The Branstads were such "person[s] affected by the [1991] determination," because they were the persons affected by the determination that there were wetlands on Tract # 2024 when they attempted to repair a tile drainage system on that tract. Again, to the extent that the USDA asserts that the "person affected" under § 3822(a)(4) must be the person who owned the land at the time of the original determination, not some subsequent owner, that reading is plainly contrary to the plain meaning of the statute.

Moreover, to the extent that the Acting Director concluded that a prior, off-site wetland determination, such as the 1987 or 1991 wetland determinations for Tract

# 2024, is "unappealable" or not subject to review in an on-site evaluation, that conclusion is plainly contrary to statutory and regulatory provisions existing at the time of the alleged wetlands violation on Tract # 2024. For example, a producer is entitled to an on-site determination of wetlands before a determination that the producer is ineligible for benefits owing to conversion of wetlands becomes binding. 16 U.S.C. § 3822(a)(4) (invalidating a prior determination when a person "affected by" that determination requests review); 7 C.F.R. § 12.6(c)(9) (1998) & (2002) (specifically requiring on-site determination before a producer is denied benefits). In 1998, at the time of the agency action at issue here (and in 2000, at the time of the agency action involving Tract # 1475), as now, a participant could obtain a review of any wetland determination before any benefits were withheld. 7 C.F.R. § 12.30(c)(4) (1998) & (2000). Such on-site review would be meaningless, if the result was a foregone conclusion, because the existing determination was "unappealable" notwithstanding contrary evidence in an on-site review.

Also, to the extent that the Acting Director concluded that prior wetland determinations are "unappealable," even if they failed to take into account conversion of the wetlands prior to December 23, 1985, that determination was also contrary to law. *Downer*, 97 F.3d at 1002 (standard of judicial review of agency action). The Swampbuster Act expressly provides that "[n]o person shall become ineligible ... for program loans or payments ... [a]s the result of the production of an agricultural commodity on ... [a] converted wetland if the conversion of the wetland was commenced before December 23, 1985." 16 U.S.C. § 3822(b)(1)(A); *Barthel*, 181 F.3d at 936; *Gunn*, 118 F.3d at 1238. The Act also provides that "[n]o person shall become ineligible ... for program loans or payments ... [a]s the result of

the production of an agricultural commodity on ... [a] converted wetland if the original conversion of the wetland was commenced before December 23, 1985, *and the Secretary determines the wetland characteristics returned after that date as a result of ... the lack of maintenance of drainage*, dikes, levees, or similar structures." 16 U.S.C. § 3822(b)(1)(G)(i) (emphasis added). To the extent that the Acting Director failed to consider whether the supposed wetlands on Tract # 2024 had been converted prior to December 23, 1985, or to consider whether wetland characteristics returned after that date as a result of the lack of maintenance of an existing drainage system, because the 1987 and 1991 wetland determinations were supposedly "unappealable," that failure was both contrary to law *and* an abuse of discretion. Such a conclusion shows that the agency failed to consider "those factors Congress intended it to consider," *i.e.*, whether there had been a pre-1985 conversion; "the agency considered factors Congress did not intend it to consider," *i.e.*, the supposed "unappealability" of agency determinations, where no statutory language supports a conclusion that agency determinations become "unappealable," and statutory language actually supports the contrary conclusion, as explained above; "the agency failed entirely to consider an important aspect of the problem," *i.e.*, whether there had been a pre–1985 conversion; and "the agency decision runs counter to the evidence before it," which here consists of copious evidence that the off-site wetland determinations in 1987 and 1991 failed to take into account an existing drainage system representing a conversion of wetlands *prior to* December 23, 1985. *See Downer*, 97 F.3d at 1002 (identifying these factors in an abuse-of-discretion or arbitrary-and-capricious re-

view of agency action).[7]

Consequently, the Acting Director's "final" determination of "unappealability" of the 1987 and 1991 wetland determinations on Tract # 2024 must be overturned as arbitrary and capricious, an abuse of discretion, and contrary to law. With this conclusion, the Director Review Determination as to Tract # 2024 will be vacated in its entirety and the case will be remanded for agency action in conformity with the court's judgment.

### D. Judicial Review Regarding Tract # 1475

#### 1. Scope of review

The court turns next to judicial review of the other agency action at issue here, the agency determination regarding Tract # 1475, identified as this court's Case No. C 01–3030–MWB. As mentioned above, the Branstads incorporate into their arguments on judicial review of agency action in Case No. C 01–3030–MWB, concerning Tract # 1475, all of the arguments they raised in their brief on the merits in Case No. C 00–3072–MWB, concerning Tract # 2024. However, they also raised one issue unique to the case involving Tract # 1475, which is whether the agency's denial of their agency appeal was arbitrary and capricious, an abuse of discretion, or otherwise contrary to law. As the court also observed above, even though the Branstads were not permitted to complete agency review of the lower-level determinations of a wetlands violation on Tract # 1475, the denial of the Branstads' request for administrative appeal based on "extenuating circumstances" is reviewable in these proceedings, because it was a

"final determination," pursuant to 7 C.F.R. § 11.13(a), in that it was the final adverse decision of the agency available from the NAD, pursuant to its procedures, on the Branstads' attempt to pursue administrative appeals. See 7 C.F.R. § 11.13(b). Therefore, the court's judicial review regarding Tract # 1475 will focus on the question of whether the agency improperly denied the Branstads' request for an administrative appeal. In addition, the court now concludes that the USDA is correct that if the agency properly denied the Branstads' request for administrative appeal as untimely, the Branstads have not exhausted their administrative remedies, and this court cannot review other agency determinations regarding Tract # 1475. See Penner v. Madigan, 974 F.2d 993, 996 (8th Cir.1992) ("No plaintiff challenged the Secretary's application of the freeze formula in an administrative appeal.... Therefore, the district court did not abuse its discretion in dismissing plaintiffs' claims for failure to exhaust administrative remedies."); Madsen v. USDA, 866 F.2d 1035, 1037 (8th Cir.1989) (only issues actually raised in an administrative appeal are exhausted for judicial review and the court does not abuse its discretion in dismissing other claims).

#### 2. Arguments of the parties

In their opening brief, the Branstads argue that the agency granted them the opportunity to show "extenuating circumstances" as to why their appeal should be granted, and that they supplied such reasons. However, they argue that the agency then failed to consider whether they

7. Similarly, to the extent that 7 C.F.R. § 12.30(c)(4) (1998) & (2002) attempts to limit the scope of an appeal of a prior wetland determination before benefits are withheld— even where the on-site determination differs from the prior determination—"to the determination that the wetland was converted in

violation of this part," rather than including the questions of whether any protected wetlands existed on the property at all or had been converted prior to December 23, 1985, that regulation is also contrary to these statutory provisions.

had shown "extenuating circumstances," instead arbitrarily applying a "good cause" standard, and arbitrarily denying that the "good cause" standard had been met. They argue, further, that the agency did not furnish them with any guidelines or explanation of what "extenuating circumstances" the agency would consider, nor in its denial of the request for consideration of their appeal did the agency supply any explanation of what "good cause" is or isn't as it relates to allowing the appeal, thus failing to provide a reasoned basis for its decision. Moreover, the Branstads argue that their timely mailing of a request for appeal that was lost in the mail or misplaced by the agency establishes "extenuating circumstances" or "good cause" for allowing their administrative appeal to go forward. Consequently, they argue that the court should order the agency to grant them an appeal hearing on the CW + 97 determination as to Tract # 1475.

In response, the USDA argues that the Branstads were provided with notice of the time for filing a request for administrative appeal and the correct address to which such a request for appeal should be sent, but nevertheless failed to file a timely appeal apparently as the result of their negligence in using an incorrect address for the request for appeal. The USDA points out that the Branstads' second, properly addressed request for appeal encloses the first request for appeal, which shows that the first appeal request was not properly addressed, and that this error likely caused the request for appeal not to be timely delivered. The USDA points out that the Branstads never acknowledged that they used the wrong address in their subsequent requests for consideration of their appeal. Moreover, the USDA argues that it is not arbitrary and capricious for an agency to expect strict conformity with its procedural requirements, and that there was no misleading representation from the agency concerning how to appeal or where to send the request to do so. The USDA also contends that the court should not reject a reasoned basis for denial of an appeal based on failure to comply with procedural requirements.

In reply, as to this issue, the Branstads argue that the agency's own procedures permit the consideration of an otherwise untimely appeal upon a showing of "extenuating circumstances," or as elsewhere stated, upon a showing of "good cause," as the agency's response to their second request for an appeal in this case demonstrates. The Branstads reiterate their contention that they have shown either "extenuating circumstances" or "good cause" for their untimely appeal in this case.

### 3. Merits of the denial of the appeal

As with the "mootness" issue in Case No. C 00–3072–MWB, the court's view of the "denial of appeal" issue expressed in its decision on the Branstads' motion for a preliminary injunction in Case No. C 01–3030–MWB has hardened upon a full consideration of the record on judicial review into a firm conclusion that the Director's determination on the issue in the February 13, 2001, letter, Record for Tract # 1475 at 1–2, was arbitrary, capricious, an abuse of discretion, and contrary to law. *See* 5 U.S.C. § 706 (a final agency determination may be overturned on judicial review only if it is arbitrary and capricious, an abuse of discretion, or otherwise contrary to law); *see also Barthel,* 181 F.3d at 937 (applying this standard of review to an agency determination of a wetlands violation); *Downer,* 97 F.3d at 1002 (same). None of the arguments offered by the USDA at trial can salvage the Director's determination on this issue, either.

#### a. Reasons relied upon by the agency

First, although the Branstads were informed that whether or not their untimely

appeal would be allowed would be based on a consideration of whether they established "extenuating circumstances," *see* Record for Tract # 1475 at 12, in Assistant Director Crutchfield's February 13, 2001, letter conveying the Director's ruling, the standard was instead inexplicably changed to failure to "establish *good cause* to relieve Mr. Branstad from the requirement of our rules." *Id.* at 1 (emphasis added). This unexplained change in standards suggests that the agency did not even consider the factor it had told the Branstads would be determinative. *Cf. Downer,* 97 F.3d at 1002 (" 'To perform this review [of agency action pursuant to 5 U.S.C. § 706] the court looks to whether the agency considered those factors Congress intended it to consider.' "). Furthermore, while the question was supposedly whether the Branstads had established "extenuating circumstances" for their failure to file a timely administrative appeal, the only factors Assistant Director Crutchfield's letter expressly states were considered were the NAD's rules for timely appeals. Record for Tract # 1475 at 1. Thus, the agency considered factors that were not even at issue: It was evident from the Branstads' attempt to establish "extenuating circumstances" that they had not fulfilled to the letter the specific timeliness requirements of the rules. *Cf. Downer,* 97 F.3d at 1002 (another factor is "whether the agency considered factors Congress did not intend it to consider"). Similarly, the NAD's reliance on failure to comply with the letter of the rules indicates that the NAD failed entirely to consider an important aspect of the problem, which was precisely whether or not there were "extenuating circumstances" for the Branstads' failure to comply with the letter of the rules for timely appeals. *Cf. id.* (considering "whether the agency failed entirely to consider an important aspect of the problem"). Indeed, nowhere in Assistant Director Crutchfield's letter is there any indication that

the NAD even considered the Branstads' argument that their timely appeal notice had been lost in the mail or any suggestion that the Director considered any other facts asserted by the Branstads as establishing "extenuating circumstances" for the failure to perfect a timely appeal.

As to the NAD's determination that no "extenuating circumstances" (or "good cause," under the NAD's belatedly changed standard) had been shown, there was uncontroverted evidence that the Branstads' counsel timely prepared and mailed a proper notice of appeal, *see* Record for Tract # 1475 at 7 & 16, such that "the agency decision runs counter to the evidence before it." *Downer,* 97 F.3d at 1002. Indeed, there is such a lack of rational connection between the facts found and relied upon by the NAD in denying the appeal and the facts demonstrating "extenuating circumstances" for the failure to perfect a timely administrative appeal that "the disputed decision cannot 'be ascribed to a difference in view or the product of agency expertise.' " *Downer,* 97 F.3d at 1002 (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)). There is nothing about the determination of whether "extenuating circumstances" have been shown in the failure to perfect a timely administrative appeal that in any way depends upon agency expertise or commends a deferential review of the agency's determination of whether such circumstances have been established. *See Downer,* 97 F.3d at 1002. Under the circumstances here, the Director's rather bizarre decision in response to the Branstads' attempt to establish "extenuating circumstances" for failure to perfect a timely appeal is entitled to no deference whatsoever.

However, the USDA argues now, as it did in its motion to reconsider the order

granting a preliminary injunction in Case No. 01–3030–MWB, that it is uncontroverted that the Branstads mailed their request for administrative appeal to the wrong address, and it was not arbitrary or capricious for the agency to determine that such a mistake does not constitute either "extenuating circumstances" or "good cause." This argument is no more persuasive here than it was on reconsideration of the preliminary injunction, not least because the agency never determined that a mistake in addressing the request for appeal did not constitute "extenuating circumstances" or "good cause."

A review of the February 13, 2001, NAD decision denying the Branstads' request for consideration of their administrative appeal shows that it does not state, or even reasonably suggest, reliance on a "wrong address" rationale. Instead, the regulation expressly relied on in the February 13, 2001, decision as demonstrating that the Branstads' appeal "does not conform to our requirements," 7 C.F.R. § 11.6(b)(1)(2) (June 23, 1999), instead refers to "thirty-day deadline," "in writing," and "personal signature" requirements. *See* Record for Tract # 1475 at 1. Thus, there is no indication in the decision at issue that mailing of the appeal request to the wrong address figured in the NAD's determination that no "extenuating circumstances" or "good cause" for the untimely appeal had been shown.

Moreover, although a "Timeliness Analysis" by a NAD Hearing Technical Assistant mentions that some correspondence from the Branstads' attorney used the wrong address, *see* Record for Tract # 1475 at 14, any connection between the mention of that mistake and the NAD's decision to deny leave to pursue an untimely appeal, *see id.* at 1, is tenuous at best. The Timeliness Analysis was dated January 29, 2001, the same date as the NAD's initial denial of the Branstads' appeal as untimely. *See id.* at 12–13. Even supposing that the Director of the NAD had available to him the "wrong address" justification that the USDA now perceives in the Timeliness Analysis, the articulation of *different* reasons for denying the Branstads' request for consideration of their untimely administrative appeal on the basis of "extenuating circumstances" (or "good cause," as the agency redefined the standard at the time of determination) in the final agency determination on the matter, *see id.* at 1, can only be taken as the Director's *rejection* of the "wrong address" reason as a justification for the agency's decision.

■   As this court explained in ruling on the USDA's motion to reconsider the preliminary injunction, some "secret reason" for agency action should not, after the fact, justify an agency determination that was arbitrary and capricious on the face of the agency's written decision. *See NLRB v. Metropolitan Life Ins. Co.,* 380 U.S. 438, 442–43, 85 S.Ct. 1061, 13 L.Ed.2d 951 (1965) ("[D]ue to the Board's lack of articulated reasons for the decisions in and distinctions among these cases, the Board's action here cannot be properly reviewed. When the Board so exercises the discretion given to it by Congress, it must 'disclose the basis of its order' and 'give clear indication that it has exercised the discretion with which Congress has empowered it.' ") (quoting *Phelps Dodge Corp. v. National Labor Relations Board,* 313 U.S. 177, 197, 61 S.Ct. 845, 85 L.Ed. 1271 (1941), and also citing *Burlington Truck Lines v. United States,* 371 U.S. 156, 167–169, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962); *Interstate Commerce Comm'n v. J–T Transport Co.,* 368 U.S. 81, 93, 82 S.Ct. 216, 7 L.Ed.2d 147 (1961)); *see also Renegotiation Board v. Bannercraft Clothing Co., Inc.,* 415 U.S. 1, 32–33, 94 S.Ct. 1028, 39 L.Ed.2d 123 (1974) (Douglas, J.,

joined by Stewart, Marshall, and Powell, JJ., dissenting) ("But an agency making decisions has no right to make secret the basis of those decisions, if the [Freedom of Information Act] is to have any real meaning in the activities of the [agency.]"). As this court also explained in denying the USDA's motion to reconsider, to hold otherwise would be tantamount to licensing post-hoc justification of whatever an agency decided on a whim it wanted to do in a particular case. Democracy—even that part of executive decisionmaking consigned to administrative processes in this country—depends upon the openness of government decisionmaking and the opportunity for citizens to challenge those government decisions on the basis of the agency's findings of fact and legal rationale. Similarly, no judicial or quasi-judicial body that is allowed to keep secret its reasons for making a decision involving the claims or contentions of a citizen can satisfy the American conception of justice. Finally, as the Eighth Circuit Court of Appeals explained in *Downer,* "If the agency itself has not provided a reasoned basis for its action, the court may not supply one." *Downer,* 97 F.3d at 1002. There was no "reasoned basis" expressed in the NAD's denial of the Branstads' request for consideration of their untimely appeal.

#### b. *Failure to mail the appeal to the correct address*

■ Assuming, for the sake of argument, that the NAD *did* rely on the fact that the Branstads mailed their request for administrative appeal to the wrong address as the basis for its denial of their request for consideration of their untimely appeal owing to "extenuating circumstances" or "good cause"—an argument supported but poorly, if at all, by the denial letter of February 13, 2001—that denial was arbitrary and capricious and an abuse of discretion. *See* 5 U.S.C. § 706

(standards for overturning agency action on judicial review); *see also Barthel,* 181 F.3d at 937; *Downer,* 97 F.3d at 1002. In none of the cases upon which the USDA now relies as justifying such a conclusion was the lack of timeliness of the request for agency review the result merely of a clerical error, such as misaddressing the request for appeal.

First, in *Gilbert v. NTSB,* 80 F.3d 364 (9th Cir.1996), the Ninth Circuit Court of Appeals did not simply reject an assertion that an attorney's broken printer did not justify overlooking failure to file a timely brief in administrative proceedings, as the USDA seems to characterize the case. Rather, the court reasoned as follows:

The NTSB determined good cause did not exist for Gilbert's failure to request an extension before the expiration of the filing deadline. When his counsel discovered that he could not print his brief, he easily could have written out, by hand, an extension request and mailed it before the midnight deadline. Certainly that would have imposed no greater burden on him than printing his brief and mailing it. Nevertheless, he failed to make any effort at all to obtain an extension. He simply filed his brief out-of-time without disclosing the late filing, and even then he did not request an extension of time within which to file it. In fact, he did not do so until the late filing was called to the NTSB's attention by the FAA. In these circumstances, we conclude the NTSB did not act arbitrarily or capriciously by determining that Gilbert had failed to establish good cause for failing to request an additional extension of time before the filing deadline. Nor did the NTSB act arbitrarily or capriciously by strictly enforcing its filing deadline, which resulted in the dismissal of Gilbert's appeal.

*Gilbert*, 80 F.3d at 368. Thus, the court plainly relied on the lack of diligence on the part of the attorney in attempting to overcome the printer problem as the basis for its conclusion that the agency had not acted arbitrarily and capriciously by refusing to recognize good cause for the failure to file a timely brief.

Similarly, in the unpublished decision in *Nitto Chemical Industry Co. v. Comer*, 1994 WL 872610 (D.D.C.1994), the district court did not rely merely on the failure of a patentee to verify express mailing by a mail contractor or get an express mail receipt for two patent applications, as the USDA suggests. Instead, the court relied upon the fact that the United States Patent Office had promulgated specific regulations for express mailing of patent applications and the process for verifying such mailings, but the patentee had failed to comply with several requirements of the regulations, including the patentee's failure to have a certificate of mailing signed by the person who actually mailed the applications, the patentee did not have an express mail receipt showing the actual date of express mailing or a statement from the person who actually mailed the patent applications that they were mailed on the date shown, the patentee's alternative submissions were not as probative of actual date of express mailing, the patentee did not properly entrust the patent applications to the post office for express mailing. *Nitto*, 1994 WL 872610 at *2–*4. Moreover, the court in *Nitto* found no prejudice to the patentee in not considering the original date of attempted mailing, as showing that "justice require[d]" consideration of that date, because there was no showing that the patents would ultimately be denied on the basis of other patent applications filed between the date of attempted mailing and the date of successful mailing. *Id.* at *4. Thus, *Nitto* involved far more specific procedural requirements for timely mailing, which were not followed, not merely a clerical error in addressing the applications, and no showing of prejudice to the patentee, which would not be the case here.

A nearer miss, but a miss nevertheless, is *Willis v. United States*, 972 F.2d 350, 1992 WL 180181 (6th Cir.1992) (table opinion), upon which the USDA also now relies. In *Willis*, the plaintiff used the wrong zip code on the mailing of a claim against the Postal Service under the Federal Tort Claims Act (FTCA). *See Willis*, 1992 WL 180181 at *1. The court held that the doctrine of estoppel could not apply to the "jurisdictional requirement" of the FTCA that an administrative claim be timely filed, and that, even if equitable tolling were available, it would not apply under the facts of the case, although the court gave no explanation for the latter conclusion in this unpublished decision. *Id.* at *3. In the present case, however, the USDA NAD specifically acknowledged the possibility of equitable tolling of the deadline for filing a request for administrative appeal by inviting the Branstads to attempt to show "extenuating circumstances" for consideration of their untimely appeal. *See* Record for Tract # 1475 at 12. In *Willis*, although the court gave no express explanation of why equitable tolling would not apply under the circumstances presented, the circumstances described by the court are plainly distinguishable from those presented here. In *Willis*, the plaintiff's counsel was notified by letter dated September 9, 1988, that the Postal Service needed additional information to perform the administrative review, but the plaintiff's counsel waited until June 8, 1990, to attempt to provide that information, and then sent it to the wrong zip code. *Willis*, 1992 WL 180181 at *1. Such a lack of diligence in responding to the agency's request would suffice to deprive a plaintiff of equitable tolling of a deadline, even in the absence of a cleri-

cal error compounding the problem of timely filing of a claim. Here, however, the time for requesting an administrative appeal was much more limited, just thirty days, not two years, and the record demonstrates that the Branstads' counsel. was reasonably diligent in attempting to file a timely request for administrative appeal, even if the request for appeal was mailed at or near the deadline. *See* Record for Tract # 1475 at 7 & 16.

Similarly unpersuasive is the USDA's reliance on *Bailey v. United States*, 642 F.2d 344 (9th Cir.1981). In *Bailey*, the court also considered the untimely filing of a claim under the Federal Tort Claims Act. *See Bailey*, 642 F.2d at 345. The court reasoned,

It is always tempting to try to extend statutory time limits in favor of those who have failed to comply with them. Judges naturally prefer that a person claiming to be injured shall have a chance to have his claim heard and decided on its merits. However, assuming, without deciding, that we may excuse literal compliance with the procedural requirements of the Act in a case in which unusual circumstances exist, this is not such a case.

Plaintiffs and their counsel do not claim ignorance of the statutory and regulatory requirements. They knew that a claim was required. They knew when it must be presented. The regulation gave them notice that a claim is not presented until it is received. Counsel had presented two other claims, arising from the same incident, and the Air Force had promptly (within a week) acknowledged receipt of those claims. Counsel mailed plaintiffs' claim some eight months before the statutory deadline. They did not send it by certified or registered mail, a well known and easy way to establish receipt of the claim by the Air Force. They received no acknowledgment of the claim, a fact

that should have suggested that the claim had not been received, but had gone astray, in view of the prompt acknowledgment of the other claims. They were under an obligation to their clients to see that the claim was received. Yet thereafter, for the better part of eight months, they did nothing at all. Apparently it was of no moment to them whether the claim was received. They did not inquire until after the two year period had run, and then only when they were awakened by a denial of one of their other claims. We do not think that we should now stretch and distort the statute and the regulation to rescue counsel from their own carelessness.

*Bailey*, 642 F.2d at 347. *Bailey* is thus plainly distinguishable from the circumstances presented here, because of counsel's lack of diligence and failure to respond in a timely way to notice that the agency had not received his administrative complaint in *Bailey*. Here, the Branstads' counsel pursued the question of whether the request for appeal had ever been filed and attempted to obtain consideration of the untimely appeal with reasonable diligence based upon failure of the USDA to receive what would otherwise have been a timely filing.

In short, the court concludes that, even if the agency had relied on failure of the Branstads to send the appeal request to the correct address as the basis for denial of their appeal, in the absence of any finding—indeed, any evidence—that the clerical error in misaddressing the appeal request was coupled with lack of diligence in attempting to pursue the appeal or to rectify the untimeliness of the appeal after notice that it had gone astray, the NAD acted arbitrarily and capriciously and abused its discretion in finding that no "extenuating circumstances" or "good cause" had been shown for failure to file an timely appeal request. The NAD's con-

clusion that the incorrect mailing address was not "good cause" for considering an otherwise untimely appeal was contrary to the evidence of counsel's diligent efforts to file a timely appeal request and diligent efforts to pursue the appeal once he learned that the first appeal request had not been received. *See Downer*, 97 F.3d at 1002. Indeed, there is such a lack of rational connection between the facts of a mere clerical error in addressing the appeal request, assuming that the NAD found and relied upon that fact, as well as the uncontroverted facts demonstrating diligent attempts by counsel to file a timely appeal and to attempt to obtain consideration of the appeal request as soon as it became evident that the original appeal request had not been received, and the conclusion that there were no "extenuating circumstances" or no "good cause" for the untimely appeal, that "the disputed decision cannot 'be ascribed to a difference in view or the product of agency expertise.' " *Id.* (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)).

Therefore, the Director's February 13, 2001, decision denying the Branstads' request for consideration of their untimely administrative appeal on the basis of "extenuating circumstances" or "good cause" must be vacated, and the NAD must consider the Branstads' administrative appeal of the "wetlands" and "conversion" determinations regarding Tract # 1475 on the merits. In so doing, the NAD is cautioned to pay due regard to this court's conclusions regarding the insufficiencies in the Director Review Determination as to Tract # 2024.

### III. CONCLUSION

The "final" agency determinations in both cases before the court cannot stand upon judicial review. In Case No. C 00–3072–MWB, involving Tract # 2024, the

Acting Director's conclusion, on Director Review, that the Branstads' administrative appeal was "mooted" by their entry into the Wetland Restoration Agreement for Tract # 2024 was arbitrary and capricious, an abuse of discretion, and contrary to law, in that it failed to recognize that the agency had acknowledged the Branstads' right to pursue their administrative appeal notwithstanding entry into the restoration agreement, the restoration agreement did *not* contain any concessions that there were "wetlands" on the tract or that they had been "converted," and a "good faith" exemption from denial of benefits on the basis of restoration would not expunge the "wetlands" violation, does not resolve the underlying issues, which are whether or not the agency's "wetland" and "conversion" determinations were correct, or allow the Branstads' repairs of the drainage system to stand. Similarly, the Acting Director's conclusion that the 1987 and 1991 wetland determinations were "unappealable" is arbitrary and capricious, an abuse of discretion, and contrary to law. The record evidence is that the 1991 determination superseded the 1987 determination. Moreover, under the statutory and regulatory regime applicable to the parties, the 1991 determination was "valid" only until a person affected by the certification requested review of the certification by the Secretary, and the Branstads were such "persons." The Acting Director's determinations are also contrary to the statutory provisions requiring consideration of whether the wetlands had been converted prior to December 23, 1985, and prohibiting the denial of benefits based on such a prior conversion or repairs to such a prior conversion, where the return of "wetlands" characteristics are the result of a lack of maintenance to such a prior conversion.

Similarly, in Case No. C 01–3030–MWB, involving Tract # 1475, the "final" agency decision denying consideration of the

Branstads' administrative appeal as untimely was arbitrary and capricious, an abuse of discretion, and contrary to law. The Director inexplicably changed the standard from whether there were "extenuating circumstances" for failure to file a timely administrative appeal to whether there was "good cause" for the failure, then failed to address properly whether such "good cause" or "extenuating circumstances" had been shown on the record presented. To the extent that the Director can be construed to have relied on the failure of the Branstads' counsel to mail the appeal request to the correct address, such a clerical error standing alone is not sufficient basis for denying the appeal, and the uncontroverted record demonstrates here that the Branstads' counsel pursued both the original appeal and efforts to obtain consideration of that appeal once it had been found untimely with reasonable diligence.[8]

THEREFORE,

1. In Case No. C 00–3072–MWB,

   a. The court finds and declares that

     i. The Branstads' administrative appeal was not mooted by the Wetland Restoration Agreement for Tract # 2024, and the agency's final determination to the contrary was arbitrary and capricious, an abuse of discretion, and contrary to law;

     ii. The 1987 and 1991 wetland determinations were subject to "appeal" in the administrative proceedings, and the agency's final determination to the contrary was arbitrary and capricious, an abuse of discretion, and contrary to law.

   b. The Director Review Determination as to Tract # 2024 is **vacated in its entirety** and this case is **remanded** for agency action in conformity with the court's judgment.

   c. Any and all enforcement actions of the USDA with regard to any wetland violation on Tract # 2024 are **enjoined.**

2. In Case No. C 01–3030–MWB,

   a. The Director's February 13, 2001, decision denying the Branstads' request for consideration of their untimely administrative appeal regarding Tract # 1475 on the basis of "extenuating circumstances" or "good cause" is vacated, and this case is **remanded** to the NAD for consideration of the Branstads' administrative appeal of the "wetlands" and "conversion" determinations regarding Tract # 1475 on the merits.

   b. Any and all enforcement actions of the USDA with regard to any wetland violation on Tract # 1475 are **enjoined** until the conclusion of the administrative appeal.

3. Judgment in both cases shall enter accordingly.

**IT IS SO ORDERED.**

---

**8.** The court has not lost sight of the fact that the Branstads prayed for a finding that the USDA's position was not "substantially justified" in either case and that they are entitled to an award of attorney fees and costs. However, the court believes that both the necessary findings if any fees are to be awarded under the Equal Access to Justice Act (EAJA), 5 U.S.C. § 504, and the amount of such fees, if they are to be awarded, should be reserved for consideration upon an application for attorney fees pursuant to N.D. IA. L.R. 54.2.